Wilde J. delivered the opinion of the Court.
This case has been argued upon the facts stated in the petition and in the answer of the respondent; which wo understand to be agreed by the parties. The petitioner contends, on these facts, that the administrator stands seised and possessed of the real estate set off on execution, in trust for the sole use and benefit of the petitioner as representing the widow of Ebenezer Hancock, and of the heirs ; and the general question is, whether the administrator is so seised, and whether the judge of probate is authorized by law to order the estate to be distributed among the widow and heirs of Ebenezer Hancock as a part and portion of his personal estate.
This question depends on the construction of St. 1788, c. 51, § 3. The respondent contends, that the provision is limited to lands, tenements and hereditaments taken on execution by executors or administrators for debts due to the deceased, and that the intention of the legislature so to limit it, is expressed in the preamble to tne statute. The intention, however, expressed in the preamble, is to remove doubts and to declare the law “with respect to the extent of the right, interest, title and estate, which executors or administrators may have in houses, lands and tenements, set off by execution, at the suit of executors or administrators, for debts due to the estates of persons deceased.” This language of the preamble is not inconsistent with that of the 3d section. Both refer not only to debts due to the deceased, but to debts due to the estate of the deceased, at the time when judgment may be recovered by an executor or administrator, and must include all debts for which the executor or administrator is bound to account in the probate office. But if he should institute a suit and recover judgment in his name as executor or administrator for a debt not belonging to the estate, the statute in such case would not apply, and the general words of the 3d section ■would be limited ai.d restrained by the words of the preamble *37 For instance, suppose the deceased had, before his death, assigned a chose in action, and that it afterwards became necessary for the administrator to institute an action in his own name for the use of the assignee, and that on judgment recovered, execution should issue and be extended on real estate. In such a case the administrator would not be seised for the use of the widow and heirs, but for the sole use of the assignee of the chose ; it would therefore not be a case within the meaning of the statute, the judgment not being recovered for a debt due to the estate of the deceased.
In the present case, however, it is clear, we think, that the debt on which judgment was recovered was a debt belonging to the estate of the deceased. It was founded on an implied promise to the deceased, to indemnify him against his liabili ty as surety for his son John Hancock, and it was recovered for the use and benefit of the estate of the deceased. The administrator was bound to account for it in the probate court, and he has so accounted, as stated in the petition. True it is, that the debt was not due to Ebenezer Hancock at the time of his decease, nor was it a debt due to the estate at the time when administration was granted or when the estate was inventoried ; but it belonged to the estate when judgment was recovered. byr the administrator, and when execution was extended on the real estate in question. And this we think sufficient to bring the case within the meaning of the statute.
The only remaining question is, whether the estate in questian is necessary for the payment of the debts &c. of the deceased, within the true meaning and intention of the statute.
It must be admitted that the affirmative of the question cannot be maintained, if the statute is to be construed strictly and according to the letter. The estate in question is not now necessary to pay the debts of the deceased, nor the legacies, nor the charges of administration. The respondent admits that these have already been discharged in the manner before stated. But cases frequently occur which cannot be brought within the letter of the law, and which are nevertheless manifestly within its spirit and meaning. When, therefore, a case is to be considered, which is excluded by the literal construction of a statute, the question always is, does it come within its *38 meaning, or is it casus omissus. So if a case is included by a literal construction, still the question is, whether it is within its true meaning. Laws are made to settle general principles and rules, and it is impossible for the legislature, when an act is framed, to have in contemplation all cases which in the course of business may possibly occur. The meaning, therefore, of a statute is not always to be ascertained by the language of it alone. Other aids may be necessary, and are to be considered according to the settled rules of construction.
The cause and necessity of making a statute are therefore to be regarded, and also the state of the law at the time, relating to the subject matter of its provisions, so as to be the better able to determine what remedy was intended, and to what extent the previously existing law was meant to be changed. It is said, the best construction of a statute is, to construe it as near to the rule and the reason of the common law as may be. Bac. Abr. Statute /, 4, 5, and the cases there cited.
It may be material therefore to consider how the law stood as to marshalling assets in the hands of executors and administrators, at the time of the passage of the act.
The law in this respect was perfectly well established and known. In all cases the personal estate was to be first applied to the payment of debts and legacies, unless they were charged on the real estate by will, nor would this even exonerate the personal estate, unless there were express words to that effect, or unless such was the plain intent of the testator. Duke of Ancaster v. Mayer, 1 Bro. C. C. 454; Watson v. Brickwood, 9 Ves. 447. This had been the established law of the land from the first settlement of the country, and it had before been the law of England from time immemorial. It is not to be supposed that the legislature intended to change this well established principle of law. On the contrary, the language of the statute plainly recognises the principle, that the personal estate should be applied to the payment of debts and legacies, before any part should be distributed among the widow' and heirs.
Another principle of law also was well established, namely, that if an executor or administrator pays, out of his own money, debts to the value of assets in hand, he may apply the as *39 sets to his own use, towards satisfaction of the moneys he has expended. Livingston v. Newkirk, 3 Johns. Ch. R. 318. If therefore the administrator had paid the judgments recovered against the estate of the deceased with his own funds, he would be entitled to reimbursement out of the effects of the judgments afterwards recovered against John Hancock the principal. By means of substitution, he would have all the rights of the creditors of the deceased whose debts he had discharged. If a creditor exacts his whole demand of one of the sureties, that surety is entitled to be substituted in his place, and to a cession of his rights and securities as if he were a purchaser. Cheesebrough v. Millard, 1 Johns. Ch. R. 413.
And this right of substitution is founded on the most manifest equity. The same right of substitution would attach to heirs, if they should pay a debt of the deceased to prevent execution from being extended on the real estate. And when the real estate belonging to the heirs is sold for this purpose by the administrator, the same principle we think applies with equal force. The estate of the heirs being sold for the payment of the debts of the deceased, the heirs have a right to be substituted in the place of the creditors.
According to these well known principles, and substituting the heirs in the place of the creditors paid, the estate in question may with great propriety be said to be necessary for the payment of the debts of the deceased, and we are of opinion that this is the true meaning and construction of the statute.
It has however been objected, that the principle of substitutian is a principle of equity and not of the common law; and therefore, that it is not to be regarded by this Court sitting as a court of probate. To this objection two answers have been given. First, that courts of probate proceed according to the course of the civil and ecclesiastical law, and have indeed equity powers in many cases ; and that the statute in question expressly gives to-the court equity powers, for it declares that the executor or administrator shall in certain cases hold real estates in trust, and that the execution may be enforced by the Court of Probate. The second answer is, that if the Court of Probate is not clothed ivith equity powers and is not to proceed upon rules of equity, yet this Court sitting as a court *40 of equity has jurisdiction over the case, and has power to enforce the trust, whatever it may be, according to the rules and principles of equity. If then this is a proper case to be brought before a court of equity, this petition should be dismissed ; for certainly this Court will not proceed to order dis ■ tribution as prayed for, when we perceive that as a court of equity we shall be obliged, if required, to make a different distribution.
The question now is, whether the administrator is seised and possessed of the estate in question, in trust for the use of the widow and heirs, as stated in the petition. This depends on the construction of the statute as relating to the facts agreed. And upon these facts, we think the administrator is not so seised, but that he is seised in trust for the use of the heirs whose property has been taken and appropriated to pay the debts of the deceased, and who have a clear right, as we think, to be substituted in the place of the creditors to whom payment has been made.
The result is, that the decree of the judge of probate must be reversed, and the petition be dismissed.